

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00112-CV

**IN THE INTEREST OF J.C.O.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01588
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Rebeca C. Martinez, Chief Justice

Sitting:          Rebeca C. Martinez, Chief Justice
                Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice

Delivered and Filed: August 20, 2025

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This accelerated appeal arises from the trial court's order, signed after a bench trial, that terminates the parental rights of appellant R.M., a man who at the time of trial was alleged to be the biological father of J.C.O. ("Child"), and appoints the Texas Department of Family and Protective Services (the "Department") as Child's permanent managing conservator.[1] In four issues, which we reorder, R.M. argues that: (1) the evidence is legally and factually insufficient to support the trial court's finding that R.M. failed to timely legitimate parentage, *see* TEX. FAM. CODE ANN. § 161.002(b)(1); (2) the evidence is legally and factually insufficient to support the

---

[1] To protect the identity of the minor child in this appeal, we refer to the child, alleged father, and others by initials or pseudonyms. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

trial court's finding that termination of his parental rights is in the best interest of Child, *id*. at § 161.001(b)(2); (3) he was rendered ineffective assistance of counsel; and (4) the trial court abused its discretion in making its conservatorship finding where its termination order is based on insufficient evidence. We affirm in part and reverse and remand in part for a new trial.

## I. BACKGROUND

In October 2023, the Texas Department of Family and Protective Services (hereinafter the "Department") initiated the underlying proceeding by filing an original petition to terminate the parental rights of C.M.R., the biological mother of Child, and C.A.O., an individual who at the time, the Department designated as an "alleged father" of Child. Child was less than one-month old at the time the Department filed its original petition. Thereafter, the trial court signed an "Order for Protection of a Child in an Emergency" that, among other things, appointed the Department as Child's "temporary sole managing conservator." After removal, Child was placed with V.B., C.A.O.'s cousin. In November 2023, the trial court signed an order for video conference to allow R.A.R., another individual who at the time was believed to be Child's biological father, to participate in a hearing. On August 14, 2024, the Department filed a first amended petition that, for the first time, alleged R.M. was the alleged father. On August 19, 2024, the trial court appointed counsel for R.M. The Department's request to terminate the parent-child relationship proceeded to a two-day bench trial that began on September 25, 2024, and concluded on October 24, 2024.

### A. First Day of Trial

On September 25, 2024, the trial court considered R.A.R.'s testimony that he strongly believed he was not the father, and it accepted his affidavit of voluntary relinquishment of his parental rights.

Jazmin Chavez, a Department caseworker, testified that Child was removed from Mother's care when he was twenty-three days old because he was born drug-exposed, and the Department had concerns regarding domestic violence, Mother's mental health, and Mother's drug use. Indeed, Mother admitted to Chavez that she used heroin while pregnant with Child. Regarding R.M., Chavez noted that Mother had mentioned R.M. was possibly the biological father in August 2024, and the Department brought him into the termination proceeding shortly thereafter. Chavez further noted that R.M. had been incarcerated in 2019, except for a one-week release in either December 2022 or January 2023. Afterward, R.M. was reincarcerated for a term that would run into early 2026.[2] Chavez acknowledged that Child's birthdate in early October 2023, the period of R.M.'s release, and Mother's newfound belief meant that R.M. was possibly Child's biological father. Indeed, Chavez explained:

> . . . I completed an FSNA with him, and he said that he would be willing to engage in services. He's not sure if the child is his, but he doesn't see a reason why he would need to engage in services, because he believes he will be incarcerated until 2026 and the child would not be in his care.

Nevertheless, Chavez believed that V.B. was adequately caring for Child. She recounted that Child is doing very well in his current placement. Chavez further recounted that V.B.'s parents and her sister live right next door. Moreover, V.B. is willing to adopt Child.

V.B. testified that she had started caring for Child when he was four weeks old, and she believed that she was related to Child because it was alleged that her cousin was Child's father. She recalled that when she first started caring for Child, he suffered from tremors, difficulty sleeping and eating, and muscle tightness. V.B. attributed these conditions to drug withdrawal symptoms. Child's muscle tightness prevented him from fully stretching his arms and legs. With the Department's help, V.B. enrolled Child in occupational therapy. At the time of trial, Child,

---

[2] The record does not include any judgment of conviction reflecting the offense for which R.M. was incarcerated.

who was almost one-year old, was meeting his developmental milestones. Nevertheless, Child was still being seen by a developmental pediatrician to ensure he was on track with his growth and weight goals.

R.M.'s trial counsel pressed that he was not ready for trial because R.M. had only been served with citation in August. R.M.'s counsel also requested that paternity DNA testing be conducted. The trial court continued the trial with regard to R.M. until October 24, 2024.

## B.     Second Day of Trial

At the start of the second day of trial, R.M.'s counsel recounted that he had visited with R.M. on October 8, 2024. At that time, no one had taken a DNA sample from R.M. R.M.'s counsel argued:

> I did have an opportunity to meet with my client in prison. He seems to think that, based on the age of the child, that it's quite possible that he's the father.
>
> My understanding is that DNA is already in play, that the child has already been — it's been done on the child.
>
> They know where the father's at. He would like DNA to be done. If, in fact, he's the father, he wants to know that, judge.
>
> And, you know, my — my issue and concern is that, you know, the Department — or, the mom has brought this individual into the — into play quite late in the case, and I was appointed quite late in the case, and by the time I got to speak with him in prison, you know, he was kind of curious as to everything that was going on and how everything was transpiring and why he wasn't notified.
>
> I tried to explain to him everything. I let him know his child was in a great place and that — you know, that he has the ability to relinquish, and he said he wants to know whether this is his child.
>
> I believe DNA was supposed to be submitted today. I don't know how true that is. But he'd like DNA to be done.

The Department objected to any continuance on the grounds that the case had been pending for almost a year and that it would be in the best interest of the Child to terminate R.M.'s parental

rights so that he could be adopted by V.B. The trial court acknowledged that it was "under timelines and deadlines to get [the] case tried in the best interest of the child," and it overruled R.M.'s announcement of "not ready."

Jacquelyn Benavides, a Department employee, testified that she last met with R.M. on September 25, 2024, and she recounted that R.M.:

> [S]tated that he knew he wasn't going to be able to have [Child] in his care, given that he's incarcerated. And he was not able to engage in any services where he is incarcerated.
>
> But he did want his son — if he is the father, he wanted his son placed with [J.M.,] his sister.

The Department performed a home study on J.M., and she was approved as a backup caregiver. J.M. conditionally agreed to care for Child, if he was in in fact proven to be R.M.'s biological child. Benavides understood that R.M.'s projected release date was January 17, 2026. Neither the Texas Attorney General's Office nor the correctional facility where R.M. was housed could confirm whether a DNA sample from R.M. had been collected.

## C.  Trial Court's Disposition

At the conclusion of the October 24, 2024, trial, R.M. re-urged his announcement of "not ready." The Department and Child's ad litem attorney requested that the trial court terminate R.M.'s parental rights. The Department sought termination because of R.M.'s failure to legitimate, *see* TEX. FAM. CODE ANN. § 161.002(b)(1), and alternatively, under subsection Q of the Texas Family Code because R.M. had been incarcerated throughout the pendency of the termination proceeding that began in October 2023, and R.M. was not expected to be released until January

26, 2026. *See id*. § 161.001(b)(1)(Q).[3] After hearing the parties' closing arguments, the trial court orally terminated R.M.'s parental rights.

On February 13, 2025, the trial court signed an order that found by clear and convincing evidence that: (1) R.M. "did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit," TEX. FAM. CODE ANN. § 161.002(b)(1); and (2) termination of R.M.'s parental rights is in the best interest of Child. *See id*. § 161.001(b)(2). The trial court appointed the Department as Child's permanent managing conservator. R.M. timely appeals from the termination order.[4]

## II. DISCUSSION

### A.    Standard of Review

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id*. at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the

---

[3] Section 161.001(b)(1)(Q) of the Texas Family Code provides that "[t]he court may order termination of the parent-child relationship if the court finds by clear and convincing evidence that the parent has knowingly engaged in criminal conduct that has resulted in the parent's (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing the petition[.]" TEX. FAM. CODE ANN. § 161.001(b)(1)(Q).

[4] Together, the termination order and an earlier "interlocutory" termination order, terminated the parental rights of Mother and R.A.R. Neither Mother nor R.A.R. appeal the termination of their parental rights, and none is a party to this appeal.

entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

**B.      Failure to Timely Legitimate**

Section 161.002(b)(1) of the Texas Family Code provides that "[t]he rights of an alleged father may be terminated if after being served with citation, he does not respond by timely filing an admission of paternity or a counterclaim for paternity under Chapter 160" of the Texas Family Code. TEX. FAM. CODE ANN. § 161.002(b)(1). If an alleged father filed an admission of paternity or a counterclaim claim for paternity, then the alleged father is given the right to require the petitioner to prove by clear and convincing evidence one of the predicate grounds set forth in section 161.001(1) and that termination is in the best interest of the child. *In re E.O.*, 595 S.W.3d 858, 865 (Tex. App.—El Paso 2020, no pet.) (citing *In re O.R.M.*, 559 S.W.3d 738, 741 (Tex. App.—El Paso 2018, no pet.)).

In R.M.'s first issue, he complains that the evidence is legally and factually insufficient to support the trial court's finding that he failed to timely legitimate parentage. R.M. references a series of cases wherein we and our sister courts have held that "[t]here are no formalities that must be observed when filing an admission of paternity or for such an admission to be effective." *In re M.J.M.G.*, 543 S.W.3d 862, 864 (Tex. App.—San Antonio 2017, no pet.) (quoting *In re J.L.A.*, No. 04-13-00857-CV, 2014 WL 1831097, at *2 (Tex. App.—San Antonio May 7, 2014, no pet.) (mem. op.)). R.M. argues that he "was actively awaiting the test results at the time of the termination hearing," that such conduct is "inconsistent with abandonment or lack of interest," and that "[t]o terminate Appellant's rights while he was cooperating in the judicial process and seeking to confirm biological parentage would contravene both the letter and the spirit of [section]

161.002(b)(1)." The Department responds by acknowledging that case law has "expand[ed] upon the statutory language in section 161.002," but that the phrase "timely filing" should be afforded its plain meaning.

We have held that "by [Father] appearing at trial and admitting that he is the child's father, an alleged father triggers his right to require the Department to prove one of the grounds for termination under section 161.001(1) and that termination is in the best interest of the child." *In re J.L.A.*, 2014 WL 1831097, at *2; *see also In re E.G.P.*, No. 09-22-00330-CV, 2023 WL 4013306, at *8 (Tex. App.—Beaumont June 15, 2023, pet. denied) (mem. op.) ("If an alleged biological father does not file a document with the court, he may nevertheless be found to have admitted paternity by appearing at trial, asserting that he was the child's father, and asking the trial court not to terminate his parental rights."). One of our sister courts has held that the signature of an attorney for an alleged father agreeing to a temporary order that stated "[t]he Court finds that [FATHER] is a parent who has responded in opposition to the suit affecting the parent-child relationship; . . ." constituted an admission of paternity under section 161.001(b)(1). *In re E.G.P.*, 2023 WL 4013306, at *9.

In this case, R.M. did not personally appear at trial because he was incarcerated. However, he did sign a family service plan, filed with the trial court on September 26, 2024, that directs R.M. to complete an eight-to-twelve-week parenting class providing:

> [R.M.] will participate in parenting classes for the purpose of identifying and utilizing techniques that might assist him in interacting with *his child* in an appropriate manner based on *his child's* age and development. [R.M.] will display protective capacities for *his child* by abstaining from contact with individuals who may pose a risk of harm to him or his child.

(Emphasis added). R.M. also communicated to the Department his desire that it consider placing the child with his family since he was incarcerated at the time. Based on this evidence, we conclude

that R.M. triggered his right to require the Department to prove one of the predicate grounds under Section 161.001(b)(1) and the (b)(2) best-interest ground. *In re J.L.A.*, 2014 WL 1831097, at \*2; *In re E.G.P.*, 2023 WL 4013306, at \*9. We sustain R.M.'s first issue.[5]

## C. Conservatorship

Regarding conservatorship, the termination order provides:

The Court finds that the appointment of the Respondents as permanent managing conservator of the child is not in the child's best interest because the appointment would significantly impair child's physical health or emotional development.

IT IS ORDERED that the DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES is appointed Permanent Managing Conservator of [Child], a child the subject of this suit, with the rights and duties specified in § 153.371, Texas Family Code; the Court finding this appointment to be in the best interest of the child.

In R.M.'s fourth issue, he argues that the trial court abused its discretion in making its conservatorship finding upon a legally and factually insufficient termination order. R.M., however, does not challenge the trial court's findings that (1) appointing him as permanent managing conservator would significantly impair Child's physical health or emotional development; and (2) appointment of the Department is in Child's best interest. *See In re J.A.J.*, 243 S.W.3d 611, 613, 617 (Tex. 2007) (holding that reversal of a termination judgment does not affect the trial court's conservatorship appointment absent assigned error when the trial court finds that appointing a parent as conservator would significantly impair the child's physical health or emotional development and that appointment of the Department is in the child's best interest). We overrule R.M.'s fourth issue.

---

[5] If a trial court erroneously terminates an alleged father's parental rights after he sufficiently admits paternity, reversal and remand for a new trial to require the Department to meet its burden of proof under section 161.001 is the appropriate remedy. *See In re E.O.*, 595 S.W.3d 858, 865 (Tex. App.—El Paso 2020, no pet.) (citing *In re C.M.C.*, 273 S.W.3d 862, 883 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g). In light of this disposition, we need not address R.M.'s second (legal and factual sufficiency regarding best interest) and third (ineffective assistance of counsel) issues. *See In re J.C.*, No. 12-19-00102-CV, 2019 WL 3940803, at \*5 (Tex. App.—Tyler Aug. 21, 2019, no pet.) (mem. op.); *see also* TEX. R. APP. P. 47.1.

## III. Conclusion

We reverse the part of the trial court's judgment terminating R.M.'s parental rights, and remand this case to the trial court for a new trial on the Department's termination claims under Section 161.001(b)(1),(2). We affirm the trial court's conservatorship appointment.


Rebeca C. Martinez, Chief Justice